UNITED STATES FIRE INSURANCE COMPANY, a foreign corporation, and United States Oil Company, Inc., a Wisconsin corporation, Plaintiffs-Appellants-Petitioners,

v.

E. D. WESLEY COMPANY, a Wisconsin corporation, and Brey, Stuewe & Braun, Inc., a Wisconsin corporation, Defendants-Respondents.

Supreme Court

*No. 80–017. Argued December 1, 1981.—Decided January 5, 1982.*

(Also reported in 313 N.W.2d 833.)

For the appellants-petitioners there were briefs by *Michael A. Mesirow* and *Kasdorf, Dall, Lewis & Swietlik, S.C.*, of Milwaukee, and oral argument by *Mr. Mesirow*.

For the defendants-respondents there was a brief by *Douglas H. Starck, George W. Greene* and *Prosser, Wiedabach & Quale, S.C.*, of Milwaukee, and oral argument by *Mr. Starck*.

Amicus curiae brief was filed by *Harry F. Franke, Jr., Anthony H. Driessen* and *Cook & Franke, S.C.*, of Milwaukee, for Associated General Contractors of Greater Milwaukee; Wisconsin Society of Architects; Associated General Contractors of Wisconsin; Allied Construction Employers Association; Wisconsin Society of Professional Engineers, Professional Engineers in Private Practice; Consulting Engineers Council of Wisconsin; Wisconsin Society of Land Surveyors; and Mechanical Contractors Association of Wisconsin.

STEINMETZ, J.   Three issues are raised in this case: whether sec. 893.155, Stats. 1977[1] (renumbered sec. 893.89, Stats., effective July 1, 1980) effective on June 13, 1976, applies to an action commenced in 1979 involving damages sustained in 1978 resulting from construction of an underground pipeline in 1953. The court of appeals ruled it did apply. We reverse.

[1] Sec. 893.155, Stats. 1977, provides:

"893.155 **Within 6 years; Improvements to real property.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to

(2) Whether an underground oil pipeline is an improvement to real estate within the meaning of sec. 893.155, Stats. 1977. The court of appeals ruled it is an improvement. We affirm.

(3) Petitioner raises the additional issue of whether the application of sec. 893.155, Stats. 1977, to this action is constitutional. We decline to answer this issue since we find sec. 893.155, as applied by this court, does not bar petitioners' cause of action.

The present action was commenced by the filing of a summons and complaint on September 5, 1979, naming as defendants, Dravo Corporation (Dravo), E. D. Wesley Company (Wesley) and Brey, Stuewe & Braun, Inc. (Brey).

The action is one for recovery of damages sustained by the plaintiffs, and particularly by the plaintiff, U.S. Fire Insurance Company (U.S. Fire), when an underground pipeline split in 1978 resulting in an oil spill in Two Rivers, Wisconsin. The plaintiff, U.S. Fire, paid for certain losses sustained by its insured, United States Oil Company, Inc. (U.S. Oil), and also paid for certain claims presented by third persons following the oil spill.

As alleged in the complaint, the pipeline was negligently designed, constructed and installed by the defendants in 1953; at all times material, U.S. Oil was the owner of the pipeline and U.S. Fire provided insurance coverage for U.S. Oil with respect to the operation of its oil storage business at Two Rivers, Wisconsin. The pipe-

---

real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction, the time for bringing the action shall be extended 6 months."

line ran in part through the property of third persons, for which U.S. Oil had an easement.

Brey filed its answer denying negligence on its part without raising any affirmative defenses. Wesley filed a motion to dismiss based on the statute of limitations. Dravo filed its answer raising the statute of limitations as an affirmative defense and then moved to sustain the affirmative defense.

The trial court, Honorable Leander J. Foley, Jr., found sec. 893.155, Stats. 1977, was applicable to this action, was also constitutional and dismissed the action as to Dravo and Wesley on December 19, 1979.

Defendant Brey subsequently served a motion to amend its original answer to include the statute of limitations and also moved for summary judgment. Judge Foley ordered that Brey be permitted to amend its original answer to include the statute of limitations and dismissed the action as to Brey.

The plaintiffs appealed and the court of appeals, on December 26, 1980, rendered its decison published at 100 Wis. 2d 59, 301 N.W.2d 271. In its decision, the court of appeals found the record did not contain the basis for the trial court permitting Brey to amend its answer and ordered a remand for a *de novo* consideration by the trial court of that decision. While the matter was pending before the court of appeals, the plaintiffs and Dravo settled and Dravo is, therefore, no longer a party to this appeal.

The court of appeals further found that the pipeline was an improvement to real estate as contemplated under the statute. The court then held that the statute was constitutional, and applied sec. 893.155, Stats. 1977, as barring plaintiffs' action against Wesley and, therefore, affirmed the trial court dismissal as to Wesley.

This court first considered the term "an improvement to real property," as used in the predecessor statute, in

*Kallas Millwork Corp. v. Square D Co.,* 66 Wis. 2d 382, 225 N.W.2d 454 (1975) when we held: "We conclude that a high-pressure water system designed for fire protection constituted, as a matter of law, 'an improvement to real property' as that phrase is used in sec. 893.155." *Kallas, supra,* at 383. In *Kallas* the court held that the question, where the facts are undisputed, is simply whether those facts fit the legislatively prescribed condition. The issue was a legal question to be resolved on the basis of the common usage of language. The court then stated:

"Webster's, *Third International Dictionary* (1965), includes the following definition of 'improvement':

" '[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'

"Similar definitions are found in 1 Bouvier's, *Law Dictionary* (Rawles 3d rev., 1914), page 1517, and Black's, *Law Dictionary* (West, rev. 4th ed., 1968), page 890." *Id.* at 386.

In the instant action, the complaint alleges the work and services of the defendants were done in regards to a pipeline to be used by the U.S. Oil Co. in connection with the oil storage and transport business of said U.S. Oil in Two Rivers, Wisconsin. We hold as a matter of law that when the pipeline was connected to the equipment located on the U.S. Oil Company's real property, that pipeline became an improvement to the oil company's real property.

Prior to the enactment of Wisconsin's first completion statute, injuries to property were governed by a six-year limitation period which ran from the accrual of an ac-

tion.[2] Under that section, the court held a cause of action accrues when there "exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Holifield v. Setco Industries, Inc.,* 42 Wis. 2d 750, 754, 168 N.W.2d 177 (1969).

Wisconsin's original special legislation limiting the time for bringing an action against persons effecting an improvement to real property became effective in 1971, sec. 893.155, Stats. That statute presented two distinct times from which the bringing of an action was to be measured. For persons involved in the design, planning or supervision of construction, the period commenced from the time of performing or furnishing of services and construction. For the persons in control of the premises, such as owners, the time period ran from the time the cause of action accrued, not from the performance or furnishing date.[3]

That forerunner of the present statute, was discussed in *Rosenthal v. Kurtz,* 62 Wis. 2d 1, 213 N.W.2d 741, 216 N.W.2d 252 (1974). Sec. 893.14, Stats., at the time was a prefatory and explanatory section of all the various periods of limitation set forth in the subsequent statutes, including sec. 893.155. We held at 6–7:

"Sec. 893.14, Stats., provides that the period of limitations 'respectively hereinafter prescribed' shall com-

---

[2] Sec. 330.19(5), Stats. 1961, provided:

"330.19 **Within 6 years; one year notice of damage by railroad.** Within 6 years:

". . .

"(5) An action to recover damages for an injury to property, real or personal, or for an injury to the character or rights of another, not arising on contract, except in case where a different period is expressly prescribed."

[3] *See,* Jursik, *Defective Design—Wisconsin's Limitation of Action Statute for Architects, Contractors and Others Involved in Design and Improvement to Real Property,* 63 Marq. L. Rev. 87 (1979).

mence 'after the cause of action has accrued.' In an action for tort, the cause of action ordinarily does not accrue, 'until some damage has occurred.' Prosser, *Torts* (hornbook series, 4th ed.), p. 144, sec. 30. This court has uniformly so held in respect to tort cases. Even if the negligence that caused the injury occurred substantially in the past, as in products liability cases, the period of limitations commences to run from the time of injury, and not from the time of the negligent act or omission. . . .

"Under the situation contemplated by the statutes, secs. 893.14 and 893.155, Stats., and under the law of torts of this state, a defect of design or construction does not ripen into an accrued cause of action until the injury is inflicted or the damage incurred. Hence, under the language of secs. 893.14 and 893.155, read together as they must be, the six-year period of limitations begins neither at the time of the last performance of service nor upon the completion of construction, but on the date the cause of action accrues, and runs for six years thereafter."

The court commented in *Rosenthal* that the required interpretation of the statutes and application of the common law rule that in a tort the cause of action did not accrue until some damage occurred did not represent legislative intent. The court stated at 7:

"It seems clear, however, that such was not the legislative intent, despite the plain meaning of secs. 893.14 and 893.155, Stats. The legislative intent rather appears to be of even greater dubiety particularly in a constitutional sense. It would deprive a putative plaintiff of a remedy before he has a cause of action. The legislative intent appears to be to deprive an injured party of any remedy whatsover. When sec. 893.155, Stats., is read alone, the period of limitations commences at the time of last performance of service by the defendant and the date of completion of the improvement to the property. Under this reading of the statute, the injured party may be foreclosed of any remedy if the injury becomes apparent beyond a six-year period, since he cannot commence an action until the cause of action has accrued."

The court further stated at 8 :

"Sec. 893.155, Stats., however, not only bars a suit before the injured party is aware of his right to do so, but goes further and bars the right to sue before it arises. Yet sec. 893.14, the prefatory section to sec. 893.155 seems to indicate that in each of the limitations thereinafter specified a right of action exists subject to the bar of limitations. If such be the case, that there is a legislatively recognized right of action that arises when the injury is sustained, a serious constitutional question is posed if the legislature, in contravention of a right statutorily recognized by it, provides, in contravention to art. I, sec. 9, of the Wisconsin Constitution, that there will be no remedy for the wrong."

In *Rosenthal,* in addition to the foregoing, we questioned the propriety of the selective classification set forth in the statute in terms of which parties in the "improvement to real property" spectrum were given the protection of the limitation of the statute. However, the court accepted the appellant's position and stated at 11–12 :

"Yet, to the extent that the statute can be reasonably interpreted to prevent a possible unconstitutional deprivation of the plaintiffs' rights in the instant case we are obligated to reach that interpretation. The plaintiffs' interpretation of the statute is reasonable. In addition, the statute as so interpreted, in this case at least, avoids any constitutional issue."

The court in the *Rosenthal* case acted in advisory cooperation with the legislature by pointing out possible constitutional infirmities of the statute and then basing its decision on an interpretation which avoided the necessity of a finding of unconstitutionality. This court has regularly declared this attitude and approach to legislative interpretation to be a necessary recognition of legislative sincerity.

The court in *Rosenthal, supra,* at 12–13, explicitly recognized the grave constitutional concerns raised by

Art. I, sec. 9 of the Wisconsin Constitution (remedy for a wrong) and the Fourteenth Amendment of the United States Constitution (equal protection) by stating:

"We have herein interpreted sec. 893.155, Stats., to give as great latitude as possible to the plaintiffs to assert their rights under that statute. By so doing *we do not validate the statute,* nor do we adopt the discovery rule that we have precluded ourselves from adopting (in malpractice cases only) in *Peterson v. Roloff, supra.* It would appear, however, that in the future we well might be confronted with a situation where the lawsuit was commenced when the defect was discovered but more than six years after both the performance of services and completion of construction. We need not in this case resolve the hypothetical problem presented." (Emphasis added.)

Sec. 893.155, Stats. 1971, without change by the legislature, was considered again in *Kallas Millwork Corp. v. Square D Co., supra.* In *Kallas,* the court held as a matter of law that a high-pressure water system designed for fire protection constituted "an improvement to real property." The court then held sec. 893.155 unconstitutional because it granted immunities to the class of defendants protected therein on a classification basis that was unreasonable and denied other potential defendants equal protection of the laws under the Constitution of the United States. Though not determinative, the court stated that the statute deprived a plaintiff of a remedy for a wrong that was recognized by the laws of the state and, therefore, violated Art. I, sec. 9 of the Wisconsin Constitution.

In *Kallas,* the court stated, as it had in *Rosenthal,* that in common law and by terms of the statute, the plaintiff did not have a cause of action until it suffered damages.

In holding the statute arbitrarily classified persons protected by it, the court noted that those not protected were "materialmen, who are ignored by the statute, and

owners and occupants, who are specifically excepted." *Kallas, supra,* at 389.

The statute was amended following the *Kallas* case and in its present form became sec. 893.155, Stats., effective June 13, 1976 (subsequently renumbered sec. 893.89). The changes made were:

(1) "[L]and surveying" and "materials" were added to the list of services which might be performed as an improvement to property.

(2) "[S]ubstantial completion" was added and "performance or furnishing of such services" was deleted.

(3) The sentence which previously made the statute inapplicable to owners or persons in control was omitted. However, it did not list them in the protected group.

(4) A provision was added allowing an extension of six months if the injury occurred more than five but less than six years after completion.

An examination of the statute indicates that the legislature included extensive findings and intent as a preface:

Ch. 335, Laws of 1975, sec. 1(a) and (b):

"(a) Subsequent to the completion of construction, persons involved in the planning, design and construction of improvements to real estate lack control over the determination of the need for, the undertaking of and the responsibility for maintenance, and lack control over other forces, uses and intervening causes which causes [sic] stress, strain, wear and tear to the improvements and in most cases have no right or opportunity to be made aware of or to evaluate the effect of these forces on a particular improvement or to take action to overcome the effect of these forces.

"(b) It is in the public interest to set a point in time following the substantial completion of the project after which no action may be brought for errors and omissions in the planning, design and construction of improvements to real estate, whether these errors and omissions have resulted or may result in injury or not. This legislation is determined to be in the public interest

and in the interest of equating the rights to due process between prospective litigants in the area of planning, design and construction of improvements to real property in an equitable manner."

The present statute does not speak to all of the concerns of this court in *Rosenthal* and *Kallas;* however, we do not reach the issue of classification in this case. We repeat the ruling in *Dane County v. McManus,* 55 Wis. 2d 413, 423, 198 N.W.2d 667 (1972), listing five criteria which a classification by the legislature must satisfy:

"As regards the specific standards for examining the reasonableness of a statute's classifications, these are well expressed in *State ex rel. Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 710, 711, 159 N.W.2d 622:
" 'Five standards for proper classification were promulgated by this court in *State ex rel. Ford Hopkins Co. v. Mayor,* and expanded in *State ex rel. Baer v. Milwaukee.* They are:
" ' "(1) All classification must be based upon substantial distinctions which make one class really different from another.
" ' "(2) The classification adopted must be germane to the purpose of the law.
" ' "(3) The classification must not be based upon existing circumstances only. [The following sentence was added to No. 3 by *State ex rel. Risch v. Trustees:* 'It must not be so constituted as to preclude addition to the numbers included within a class.']
" ' "(4) To whatever class a law may apply, it must apply equally to each member thereof.
" ' " . . .
" ' "(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation." ' "

This court as stated in *Rosenthal, supra,* is not required to rule on the constitutionality of sec. 893.155,

Stats. 1977, since these plaintiffs are not affected to their detriment by the interpretation given to the statute's lack of application to them. The statute cannot be applied to these plaintiffs to deny them their right to sue, since to do so would mean their right to sue had been negated by the time it accrued under previous statutory and common law rights.

Accrual of an action under common law occurs when damages were sustained. A cause of action consists of a legal obligation, its breach and resulting injury (physical or personal). " ' "A cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." ' " *Holifield v. Setco Industries, Inc., supra,* at 754.

The enabling legislation of sec. 893.155, Stats. 1977, ch. 335, Laws of 1975, under "intent" (2) (c) stated: "A cause of action, for the purposes of section 893.14 of the statutes, shall be deemed to accrue as of the time of the alleged wrongful act." This intent acted as a reversal of the previous statutory and common law definition of "accrual." If applied to construction completed before the effective date of the statute, this would mean an elimination of a previously existing potential remedy for a wrong without the opportunity by notice to protect against its results by contract or warranty of services performed.

As applied to the instant case, the chronology of events is as follows:

> 1953—completion of pipeline.
> June 13, 1976—effective date of sec. 893.155, Stats. (1977).
> September 5, 1978—oil spill.
> September 5, 1979—action commenced.

Thus applying literally the language of the statute with the enabling portion, the statute, though effective

in 1976, prohibited plaintiff from maintaining a cause of action after 1959, which was six years after substantial completion of construction. Therefore, by the time damages were sustained in 1978, the plaintiffs' cause of action had already been dead or in a state of repose for 17 years.

This result claimed by Wesley was due to the legislature changing the accrual of an action as previously defined, and instead made the triggering date unrelated to injury or damages by using "substantial completion of construction" as the accrual date.

The court distinguished between cause of action maturing to a vested right and remedy in *Kallas, supra,* at 393:

"While we find arguable merit in the argument we posed in Rosenthal, *i.e.,* that sec. 893.155, Stats., denies a remedy for a legislatively recognized right under art. I, sec. 9, of the Wisconsin Constitution, we do not rest our decision on that aspect of possible unconstitutionality. Nevertheless, it would appear that, were sec. 893.155 otherwise constitutional, a plaintiff similarly situated to the plaintiffs herein would be foreclosed from any redress [remedy] before any injury had occurred. *See: Diana Shooting Club v. Lamoreux* (1902), 114 Wis. 44, 58, 89 N.W. 880. Sec. 893.155 appears to abrogate a remedy for a very real wrong. *See: Rosenthal, supra.*"

"If such be the case, that there is a legislatively recognized right of action that arises when the injury is sustained, a serious constitutional question is posed if the legislature, in contravention of a right statutorily recognized by it, provides, in contravention to art. I, sec. 9 of the Wisconsin Constitution, that there will be no remedy for the wrong." *Rosenthal, supra,* at 8.

For the legislature to state there must still be injury for a cause of action, but then to state that injury is conclusively presumed to have occurred at the time of the wrongful act (the substantial completion of con-

struction), is to recognize a cause of action accruing in the past but deny the remedy retroactively. This was not intended by the legislature as indicated by any stated intention, nor would it be allowed by Art. I, sec. 9 of the Wisconsin Constitution;[4] therefore, the statute must be applied prospectively from the date of the effectiveness of the statute.

The legislature could not have intended to grant these plaintiffs the vested right to a cause of action in 1953 by a statute effective in 1976, and then limit the plaintiffs' ability to seek their remedy by 1959, only to have them 17 years late for commencement of their cause of action due to the statute. Neither could the legislature have intended to grant these plaintiffs a vested right in the past (1953), and then to take away their remedy to sue by the retroactive application of the statute. If that had been the intent of the legislature, it would have required a clear statement to that effect, which was not done, and, if done, would have contravened Art. I, sec. 9 of the Wisconsin Constitution.

We assume for purposes of this decision that the "wrongful act" stated in the enabling legislation to sec. 893.155, Stats. 1977, is the same as "substantial completion of construction," since the legislature did not define either term and since sec. 893.155 applies a limit for suit triggered by the substantial completion of construction date. That substantial completion of construction date must include any wrongful act up to then performed in the improvement to the real property.

---

[4] Art. I, sec. 9 of the Wisconsin Constitution provides:

"Remedy for wrongs. SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character, he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, comformably to the laws."

It would not be permissible to grant a remedy in the past and then eliminate it in the same legislation. The legislature did not declare it intended to do so, and the Wisconsin Constitution would not allow for such conduct.

The general rule in Wisconsin is that legislation is presumptively prospective unless the statutory language clearly reveals either expressly or by necessary implication an intent that the statute apply retroactively. *State v. ILHR Department*, 101 Wis. 2d 396, 403, 304 N.W.2d 758 (1981), citing *Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau*, 97 Wis. 2d 435, 442–43, 293 N.W.2d 515 (1980).

This court recently reiterated: "The general rule of statutory construction is that statutes are to be construed as relating to future and not to past acts." *Gutter v. Seamandel*, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981). Combining the time of accrual set by the legislature with the foregoing rules of statutory construction, we hold the statute of limitations set forth in sec. 893.155, Stats. 1977, is not retroactively applicable and does not bar the action commenced by the plaintiffs on September 5, 1979.

It is a fundamental rule of statutory construction that a court is required to avoid construing a statute in such a way as would render that statute unconstitutional. As stated in *Lewis Realty v. Wisconsin R. E. Brokers' Board*, 6 Wis. 2d 99, 108, 94 N.W.2d 238 (1959):

"[I]t is the duty of this court to so interpret a statute as to uphold its constitutionality if this can be reasonably done without doing violence to the accepted rules of statutory interpretation." *See also, Swanke v. Oneida County*, 265 Wis. 92, 98–99, 60 N.W.2d 756, 62 N.W.2d 7 (1953); *Rosenthal v. Kurtz, supra,* at 11–12.

In order to comply with the presumption of prospective application and avoid potential constitutional violation, we preserve the intent and integrity of sec. 893.155, Stats. 1977, by holding it is to be applied only to real property improvements substantially completed after the effective date of that statute. Since the statute of limitations contained in sec. 893.155 is prospectively applicable to the instant case, we need neither examine the merits of nor rule on petitioners' arguments concerning the statute's constitutionality.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part.