CHRISTIANSON, Administrator, Respondent, vs. THE PIONEER
FURNITURE COMPANY, Appellant.

*October 15 — December 16, 1898.*

*Appeal: Reversal: Conditions precedent to new trial: Payment of costs:
Waiver: Constitutional law.*

1. A plaintiff, upon reversal of a judgment or order in his favor on de-
fendant's appeal, is required by sec. 3072, Stats. 1898, as conditions
precedent to his right to proceed further in the case, to pay the
taxable costs on such reversal and procure the record to be remitted
to the trial court, and to bring the cause to trial within one year
after such reversal, unless the same is continued for cause; and if
he fails to do so the complaint must be dismissed. The trial court
has no discretion to dispense with either of those conditions, even
on account of the poverty of the plaintiff.

2. The neglect of the plaintiff to pay the costs in the supreme court is
not a mere irregularity which is waived by the defendant's partici-
pating in a new trial after repeatedly insisting on his statutory
rights and preserving his exceptions to the refusal to grant them.
*Whereatt v. Ellis*, 85 Wis. 340; *Raymond v. Keseberg*, 98 Wis. 317;
and *Mills v. Nat. F. Ins. Co.* 92 Wis. 90, distinguished.

3. The provision of sec. 3072, Stats. 1898, requiring payment of costs as
a condition of further proceeding in the action, is not in contraven-
tion of sec. 9, art. I, Const., which declares the right of every per-
son to obtain justice freely and without purchase. That section
was designed to prevent arbitrary exactions as the price of delay-
ing or expediting justice, and not exactions for expenses of liti-
gation.

APPEAL from a judgment of the circuit court for La Crosse
county: O. B. WYMAN, Circuit Judge. *Reversed.*

Action to recover compensation for the death of Peter C.
Christianson, alleged to have been caused by negligence of
defendant, in that it set the deceased to work at a ripsaw,
which, with its connections, was so improperly guarded and
out of repair as to render it unsafe and unsuitable for such
work. The cause was tried in November, 1894, resulting in
a judgment for plaintiff, which, on appeal to this court, and

Christianson vs. The Pioneer Furniture Co.

on March 27, 1896, was reversed and the cause remanded for a new trial. Judgment for costs was rendered on the appeal in favor of the defendant, amounting to $274.05. Thereafter plaintiff paid the clerk's fees and caused the record to be remitted to the trial court.

At the September term of such court for 1896, on notice by and request of plaintiff, the case was placed on the calendar for a new trial. When the calendar was called, defendant's counsel moved the court to strike the case therefrom because, as the fact was, the judgment for costs aforesaid had not been paid, or any part thereof except the clerk's fees, and further moved the court that all proceedings in the action be stayed until plaintiff paid such judgment. The motion was denied and the ruling was duly excepted to. On the hearing of the motion, plaintiff made proof that he failed to pay the costs because not financially able to do so.

A trial was thereafter had during the term, resulting in a disagreement of the jury. Thereafter, at the June term of the court for 1897, and within the year succeeding the reversal of the first judgment, a third trial was had, resulting in a second disagreement.

Thereafter, on April 14, 1897, a year having expired since the reversal aforesaid, defendant's counsel, on due notice to plaintiff's counsel, moved the court for judgment dismissing the action for failure, as the fact was, to pay the judgment for costs in the supreme court as provided by statute. The motion was denied, and defendant's counsel duly excepted to the ruling.

Thereafter, on notice by and at the request of the plaintiff's counsel, the cause was placed on the January calendar for 1898 for trial. The judgment for costs being still unpaid, defendant's counsel moved the court on that ground to strike the cause from the calendar, which motion was denied and due exception to the ruling taken. The cause was thereafter tried during the term, the defendant partici-

pating therein, resulting in a verdict in plaintiff's favor.
Judgment was rendered on the verdict, and from it this ap-
peal was taken by defendant, the bill of exceptions having
been first duly settled, preserving of record the objections,
rulings, and exceptions aforesaid, and others relating to mat-
ters which occurred on the trial.

For the appellant there was a brief by *Wickham & Farr*,
and oral argument by *James Wickham*.

For the respondent there were briefs by *A. C. Larson* and
*Frawley, Bundy & Wilcox*, attorneys, and *Winter, Esch &
Winter*, of counsel, and oral argument by *C. T. Bundy*.
They argued, among other things, that the statute only re-
quires the plaintiff to pay so much of the costs as are neces-
sary to permit the return of the *remittitur*.   *Trowbridge v.
Sickler*, 48 Wis. 424; *Felt v. Amidon*, id. 66; *Packard v.
Backus*, 83 id. 213; *Whereatt v. Ellis*, 85 id. 343; *Mills
v. Nat. F. Ins. Co.* 92 id. 92.   The defendant waived its
right to a dismissal of the complaint for noncompliance with
sec. 3072a, S. & B. Ann. Stats., by participating in two trials
within the year after the reversal.   *Whereatt v. Ellis*, 85
Wis. 343; *Mills v. Nat. F. Ins. Co.* 92 id. 92; *Raymond v.
Keseberg*, 98 id. 317; *Pier v. Storm*, 37 id. 247.

The following opinion was filed November 1, 1898:

MARSHALL, J.   The statement of facts preceding this opin-
ion discloses the only assignments of error that need be con-
sidered.   There are many other errors assigned in appellant's
brief and ably argued by counsel on both sides, which would
call for careful consideration if reached.   But the first point
made by appellant is considered decisive of the appeal, so a
complete statement of facts upon which the other errors are
assigned would unnecessarily incumber the record to be pre-
served, and is therefore omitted.

Sec. 3072, Stats. 1898, provides that, " It shall be the duty
of the plaintiff in any action or proceeding when a judgment

or order in his favor therein is reversed by the supreme court on defendant's appeal, to pay the taxable costs on such reversal, procure the record in said cause to be remitted to the trial court and bring the cause to trial within one year after such reversal unless the same be continued for cause, and if he fail so to do the complaint shall be dismissed." That is plain language. Judicial construction or interpretation has no office to perform in regard to it. Any attempt to change the plain meaning would be a clear invasion of the domain of another branch of the government, whose duty it is to make the law. If it is harsh or unreasonable, as claimed by respondent, and we do not say that it is, for much may be said in support of it as a wise provision, so long as it does not contravene the constitution at any point the court must administer it as it is.

It was the duty of plaintiff to have paid the judgment for costs rendered on the reversal of the first judgment, and to have brought the case to trial within one year after such reversal, unless such conditions were waived by the defendant. A failure to perform that duty, in the absence of a waiver of it, entitled defendant to a dismissal of the complaint. Both payment of costs and bringing the action to a new trial were conditions precedent to the right to further proceed on the part of plaintiff. It was competent for defendant to waive either condition expressly or by implication, but it was not in the power of the trial court to dispense with either condition and to so administer the statute as to fit the financial situation of the plaintiff. There was no discretionary power whatever in the matter lodged in the trial court.

No legitimate ground is perceived for saying that defendant, at any stage of the proceeding, waived its statutory rights. It did nothing after the reversal except to resist plaintiff's proceeding further without paying the costs, and to participate in what occurred on plaintiff's motion, protesting at every step because of their nonpayment, and

promptly, upon the year expiring, to move for a dismissal of the complaint. The case is unlike *Whereatt v. Ellis*, 85 Wis. 340, where the successful party paid the costs in this court, caused the record to be remitted, and took various proceedings inconsistent with standing on his rights under the statute. It is just as unlike *Raymond v. Keseberg*, 98 Wis. 317, where the successful party paid the clerk's costs, caused the record to be remitted within a year after the reversal, thereafter negotiated with plaintiff for a settlement till it was too late to put the case on the calendar within the prescribed time, and after the expiration of the year, and before trial, accepted the costs on reversal, which were paid in full by plaintiff.

The neglect of plaintiff to pay the costs in this court, under the circumstances, was by no means a mere irregularity that was waived by defendant's participating in the trial after repeatedly insisting upon its statutory rights and preserving its exceptions to the refusals to grant them.

It is suggested that the law is unconstitutional in that it contravenes sec. 9, art. I, of the state constitution, which provides that every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property, or character; that he ought to obtain justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws. That provision is very old. Its history dates back to the days of Magna Carta. It was designed to prevent a species of official exactions made as the price of delaying or expediting justice. From the lowest officer to the king himself, in the olden times, bribes were freely demanded and taken to procure the benefits of the laws. They bore no relation whatever to our system of exactions for expenses of litigation, called costs, or the charge as a tax on suits, imposed under laws which bear equally upon all; but they were arbitrary exactions sanctioned by

the manners of the times, that went to the personal benefit of the judicial head or body controlling the execution of the law, or to servants or officers connected therewith. It was such abuse, among others, that the barons of England forced King John to abolish by granting the Magna Carta. It contained the following as one of the guaranteed limitations upon kingly prerogatives: " We will not sell the right and justice to anyone, nor will we refuse it, or put it off." Says Sir Edward Coke, " The king, in the judgment of the law, is ever present and repeating in all his courts, '*Nulli vende-mus, nulli negabimus, aut differemus rectum vel justitiam,*' and therefore every subject, for injury done him '*in bonis, in terris, vel persona*' by any other subject, be he ecclesiastical or temporal, without any exceptions, may take his remedy by the course of the law and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay." So the right thus obtained as a concession from sovereign power has come down to us through the centuries that have passed, and been preserved in all its integrity in substantially all state constitutions. They do not grant the right, but guarantee the preservation of one that existed under the constitution of England. The requirement, for the payment of the expenses of litigation taxed according to law, in no way contravenes that valuable right. Laws of the latter character have been sustained by all courts. Laws have frequently been sustained by this court requiring the payment of taxes alleged to be illegal, as a condition of appealing to the courts to avoid the tax deed based thereon. The constitutional provision does not refer to that kind of exactions. *Lombard v. McMillan,* 95 Wis. 627.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment dismissing the complaint, with costs to be taxed according to law.

Christianson vs. The Pioneer Furniture Co.

The respondent moved for a rehearing, and the following opinion was filed December 16, 1898:

MARSHALL, J. A motion for a rehearing made by respondent has been carefully considered, without effect other than to confirm the views expressed in the opinion on file. Counsel, in presenting the matter, indulged in some intemperate language, bordering, at least, on discourtesy, and meriting some rebuke in disposing of the motion. The high regard entertained for them here, as gentlemen distinguished in the profession and of care in observing the ethics of their calling, enables us on this occasion to excuse their intemperate words, considering them as used without deliberation or bad intent, but impulsively, under the sting of disappointment at an unlooked-for result in a matter of deep professional interest to them and pecuniary interest to their client. Counsel should be comforted in such situations by the reflection that courts do not make the law, and that the safest judicial system for all, and the one which, in the long run, best protects the most valuable personal rights of property, particularly as to the weak and humble, is one where courts may be depended on to administer the law firmly, according to the intent of its creators, as written in the books, even though, in an individual case now and then, some hardship may result. Ideal justice stands high above all fear or favor, testing rights by the law as it is believed to be written, with eyes blinded to consequences which courts cannot consider, though human sympathies, possessed by judges in as high degree as other people, be touched thereby most deeply. It is not improbable that such sympathies are often most deeply touched in situations where there can be no possible relief by following the leanings they tend to influence.

We are asked to reconsider this case in the light of *Mills v. Nat. F. Ins. Co.* 92 Wis. 90, the theory being that the holding there was overlooked here, and was overruled with-

out direct reference to it. It was neither overlooked, nor was it overruled, as the court then viewed and now views the matter. If it had been supposed there was any conflict between the two decisions, the subject would certainly have been referred to in an unmistakable way; but it was not so supposed, and no such conflict is perceived now. That a situation may appear different when viewed judicially, from when looked at on the bias from the standpoint of a partisan, is what we meet at every turn in official life. If that were not so, there would be much less use for courts.

A careful, dispassionate review of the very brief opinion of Mr. Justice Newman in the *Mills Case*, will disclose that the only point decided was that an irregular notice of trial is waived by going to trial on the merits. True, as appears from the statement of facts, one of the objections raised to the notice of trial was that the costs in the supreme court had not been paid, yet the situation, when there was a mere premature notice of trial, was what the court considered, and the point thus raised, what the court decided. That not only clearly appears by the opinion, but by the authorities cited therein. There was no objection to the trial itself, except incidentally, by the objection to the notice of trial made on two occasions, first to placing the cause on the calendar, and second, by moving to strike it from the calendar. This court held rightly, that the mere placing of a cause on the calendar improperly is an irregularity which is waived by going to trial on the merits. Such is *Mills v. Nat. F. Ins. Co.* In this case, if counsel for appellant had relied on a mere objection to the notice of trial as premature, the result would have been the same as in the *Mills Case*. It is by no means certain that failure to pay the costs before notice of trial, in a case circumstanced as this was, would be even an irregularity. It is not the payment by the losing party, of costs adjudged in this court, before he can *notice the cause for a new trial* below which is the real condition required

by the statute; it is the payment of costs before trial. If paid after the notice and within the year it is not clear, by any means, but that the trial can then be had, subject to the discretionary power of the court to continue the cause on account of the late payment.

In this case, appellant's counsel, at the first opportunity, objected to the trial because of noncompliance by respondent with the statute in question, and moved for a stay of proceedings till the statute should be complied with. True, we said in the former opinion that a motion was also made to strike the case from the calendar on the same ground, which was denied, while the order of the lower court shows that such motion, though made, was withdrawn. But, looking at the bill of exceptions, which purports to give a history of what occurred, without reading the order, it fairly warranted what was said. The language is: "Defendant moved to strike such action from the calendar on account of plaintiff's failure to pay said costs, and further moved the court that proceedings in the action be stayed and that plaintiff be not permitted to bring said cause to trial until he pay said costs. The court overruled said motion." There is not a suggestion there of any withdrawal before the ruling, though, as said before, in the order it is recited that the objection to the notice of trial was withdrawn; but we assumed, as we had a right to do, that the history of the matter outside the order was correct. But this is not material. We only refer to it, because of complaint by the learned counsel for respondent, to show how the inaccurate statement in the opinion came to be made.

As before indicated, a mere motion to strike from the calendar did not successfully reach the defect, or the failure to insist upon such motion waive it. Counsel for appellant had evidently read with profit *Mills v. Nat. F. Ins. Co.* 92 Wis. 90, and invoked the statute at the very point where it barred further proceedings, by objecting to the trial and

Lee vs. The Chicago, St. Paul, Minneapolis & Omaha R. Co.

moving the court to stay such proceedings till respondent paid the costs as provided by law. That being denied, and one of the reasons (not good, however) urged for it, as appears, being that the statute allowed one year for payment of the costs, notwithstanding a trial in the meantime, at the first opportunity after the expiration of the year, not waiting for the regular term of the court, a motion was made to dismiss the cause for noncompliance with the statute, and later, when the cause was reached for trial at the regular term, a motion was again made to dismiss on the same ground. Under such circumstances, to say that the statutes shall not be enforced, would be to usurp the functions of another department of the government, and judicially, in form, annul its enactments. The result to the unfortunate plaintiff is to be regretted, but the responsibility resting here could not otherwise be properly discharged than by the decision rendered.

*By the Court.*— The motion for rehearing is denied.